IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES A. JEFFERSON a/k/a
JAMES JOHNSON,

        Plaintiff,

    v.

DR. ALI HUSAIN, et al.,

        Defendants.

CIVIL ACTION
NO. 14-2485

## OPINION

**Slomsky, J.**                                    **March 31, 2016**

## I.      INTRODUCTION

Plaintiff James A. Jefferson, also known as James Johnson ("Plaintiff" or "Jefferson"), brings this counseled civil rights action under 42 U.S.C. § 1983 against Officer Orville Ford ("Officer Ford"), Officer Jannelle Franklyn ("Officer Franklyn")[1], Doctor Ali Husain ("Dr. Husain"), Albert Einstein Medical Center, Albert Einstein Healthcare Network, Albert Einstein Medical Associates, Inc., and Albert Einstein Medical Practitioners, Inc. (collectively, "Defendants") for allegedly violating his constitutional right to medical privacy.  (Doc. No. 1.) Plaintiff also asserts state law claims for a violation of the Pennsylvania Confidentiality of HIV-Related Information Act, 35 P.S. § 7601, et seq., and breach of physician-patient confidentiality. Before the Court are Motions for Summary Judgment filed by Defendants.

Defendants Officers Ford and Franklyn (collectively, the "Officer Defendants") filed a Motion for Summary Judgment on August 10, 2015 (Doc. No. 36), and Plaintiff filed a Response on August 31, 2015 (Doc. No. 38).  Defendants Albert Einstein Medical Center, Albert Einstein

---

[1]   Officer Franklyn's name is sometimes spelled in the record as "Franklin."  The Court adopts the spelling used by the Officer Defendants.

Healthcare Network, Albert Einstein Medical Associates, Inc., and Albert Einstein Medical Practitioners, Inc. (collectively, the "Einstein Defendants") and Dr. Husain filed a Motion for Summary Judgment on August 11, 2015.  (Doc. No. 37.)  Plaintiff filed a Response to the Einstein Defendants and Dr. Husain's Motion on August 31, 2015 (Doc. No. 39), and the Einstein Defendants and Dr. Husain filed a Reply on September 29, 2015 (Doc. No. 40).  For the following reasons, the Court will grant the Officer Defendants' Motion in full, and grant in part and deny in part the Einstein Defendants and Dr. Husain's Motion.[2]

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is HIV-positive and was incarcerated at the House of Correction of the Philadelphia Prison System during the time period relevant to this action.  (Doc. No. 38-3 at 6:8-12; Doc. No. 36-3.)  On or about January 9, 2012, Plaintiff was transported by two corrections officers from the House of Correction to Defendant Albert Einstein Medical Center for medical treatment.  (Doc. No. 12 ¶ 13; Doc. No. 38-3 at 7:11-20.)  At the hospital, Plaintiff was accompanied by the two corrections officers into an examination room.  (Doc. No. 38-3 at 8:20-22.)  Dr. Husain entered the room, reviewed Plaintiff's medical chart, and stated to Plaintiff that his symptoms may be related to his HIV.  (Id. at 8:6-22.)  The two corrections officers were in the room when Dr. Husain mentioned his HIV.  (Id.)  On an office note from Einstein

_____

[2]   In deciding Defendants' Motions for Summary Judgment, the Court has considered the Amended Complaint (Doc. No. 12), the Answers (Doc. Nos. 15, 19), the Officer Defendants' Motion for Summary Judgment (Doc. No. 36), Plaintiff's Response to the Officer Defendants' Motion (Doc. No. 38), the Einstein Defendants and Dr. Husain's Motion for Summary Judgment (Doc. No. 37), Plaintiff's Response to the Einstein Defendants and Dr. Husain's Motion (Doc. No. 39), the Einstein Defendants and Dr. Husain's Reply (Doc. No. 40), and the pertinent exhibits.  The exhibits include Plaintiff's deposition transcript (cited as Doc. No. 38-3), an Affidavit of Deputy Warden Patricia Powers and Plaintiff's grievance report (Doc. No. 36-3), Plaintiff's Answers to the Officer Defendants' Interrogatories (which do not include the Interrogatories themselves) (Doc. No. 38-2), and the Einstein Defendants' Requests for Admissions directed to Plaintiff (Doc. No. 37, Ex. B).

Nephrology dated January 9, 2012, Dr. Husain is listed as the treating physician, and Plaintiff "James Johnson" is listed as a 59 year old who presented with asthma, sickle cell trait, migraines, history of NHL (non-Hodgkin lymphoma), HIV, and hypertension.  (Doc. No. 37 at 13 ¶ 1; Doc. No. 37 at 3 ¶ 7; Doc. No. 39 at 3 ¶ 7.)  No other documents related to the hospital visit have been identified.

Thereafter, while still at the hospital, one of the two corrections officers (CO 1)[3] made a comment regarding the HIV revelation to Plaintiff in the presence of the other officer (CO 2).  (Doc. No. 38-3 at 8:25 – 10:11.)  Once back at the prison, the same corrections officer (CO 1) then told another unidentified officer on Plaintiff's unit (CO 3)  that Plaintiff "has that hot stuff," which was interpreted by individuals in the prison to mean HIV or AIDS.  (Id. at 11:12 – 13:16.)  The unidentified unit officer (CO 3) then allegedly repeated the information to other prisoners.  (Id.)  Officers and inmates in the unit became aware that Plaintiff was HIV-positive and ostracized him.  (Id. at 9:14-25; 34:11-16.)  Plaintiff has suffered depression, emotional distress, and other mental symptoms as a result.  (Doc. No. 12 ¶¶ 16 – 20; Doc. No. 38-3 at 13:25 – 14:17, 34:5-16, 35:6-15, 37:5-12.)

Although the Amended Complaint names Officers Ford and Franklyn as the corrections officers who transported Plaintiff on January 9, 2012 (Doc. No. 12 ¶ 13), the evidence reveals that it was in fact Officer Ford and Officer Parker.[4]  Plaintiff testified during his deposition as follows:

Q:  Okay. Do you know who transported you to the hospital?

---

[3]   The Court assigns these numbers for ease of reference.

[4]   Officer Parker is not a named defendant in this action.  The unidentified unit officer referred to above as "CO 3" is also not a named defendant in this action.  Officer Parker is the officer referred to as "CO 1," and Officer Ford is the officer referred to as "CO 2" above.

A:  Yes.  I believe it was Officer Ford and Parker.

. . .

Q.  Okay.  What happened once you arrived at the hospital?

A.  Well, we went into the examination room, and they were standing –
. . . Well in the examination room, Dr. Husain came in, and he picked up
the chart, and he was looking at the chart, and he said, well, you know, this
might have something to do with your HIV.

Q.  Okay.  Was anything else said about your HIV at Einstein?

A. No.

Q. And were the two correctional officers present when he said that?

A. Yes.

Q.  After that you went back to the prison?

A.  Well, we came out of the examination room and went down to the
transportation room, and the female officer, I believe, was Officer Parker –
was kind of irate, and she looked at me and said, I wish I would have
known how sick you were before we got here.  And then they put me in
the room, and then her and Officer Ford went outside, and I don't know
what they spoke about when they went outside, but when we got back to
the unit, she spoke to the officer on the unit, and I heard something to the
effect of, oh, he had got that hot stuff.
And I walked up there to the desk, and the officer at the desk was pulling
my picture up on the computer.  And then after she left, some of the
inmates who are friendly with the officers on duty were up at the desk
with him.  And before that day, I was like, the old head they came to for
advice on the block, but after that, it was, oh, he had got that hot stuff. . . .

Q.  So when you say the transportation room, is that back at the prison?

A. No.  That was the room in the basement of the hospital.

Q.  Okay. So that's where the female officer said, I wish you had told me
how sick you were?

A.  She said she wished she had have known.

. . .

Q.  And then you said that when you got back to your unit, the female
officer told another corrections officer –

4

A.  An officer on my unit.

Q.  Let me just get out the whole question. You heard the female officer that took you to the hospital tell another officer that he has that hot stuff, is that correct?

A.  Correct.

Q.  Did you hear her say anything else about your HIV?

A. Basically, that's what I heard, but everyone inside the prison knows what that's a bi-word for.

Q.  And what's it a bi-word for?

A. Well, they think it's AIDS.

Q.  Now, did you ever hear the male officer who took you to the hospital say anything about your HIV?

A. Well, he went out in the hallway with her.  You know, he just looked at me when she said it, and then they went out in the hallway.

Q.  So you never heard him say anything?

A.  No.  I don't know what he may have said.
. . .

Q.  The female officer that took you to Einstein, who was she talking to?

A.  When we returned to the prison, she was talking to the officer on her unit.

Q.  Did you ever hear the officer on the unit say anything to anyone else about your HIV?

A.  Oh, I went up to the desk, and I saw he had my picture up there, and I got, like, paranoid, and I walked away.  And then I saw some of the inmates who are friendly with the officers stop at the desk, and then the behavior that transpired after that let me know exactly what transpired.

Q. And Officer Parker, that was the female officer that took you to the hospital?

A. Yes.

Q.  And she told the officer on your unit that you had the hot stuff on January 9th, 2012, correct?

A. Correct.

(Doc. No. 38-3 at 7:21-24; 8:25 – 10:2-11; 11:12 – 12:14; 12:19 – 13:16.)

In addition, the following facts are taken from the Officer Defendants' Statement of Undisputed Material Facts, which are deemed admitted because Plaintiff has not responded or objected to same.[5]  Correctional Officers Ford and Parker took Plaintiff from the Philadelphia House of Corrections to Einstein Medical Center on January 9, 2012.  (Doc. No. 36-1 ¶ 1.) Officers Ford and Parker were present when Dr. Husain mentioned that Plaintiff had HIV.  (Id. ¶

---

[5]   Pursuant to Fed. R. Civ. Pro. 56(e), if a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion.

Additionally, Judge Slomsky's Scheduling and Motion Policies and Procedures, available at www.paed.uscourts.gov, and referred to in the Scheduling Orders in this case (Doc. Nos. 22, 31) provides the following regarding Rule 56 Motions:

Any motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 shall include a separate Statement of Undisputed Facts which sets forth, in numbered paragraphs, the material facts that the moving party contends are undisputed and entitle the movant to judgment as a matter of law.  Only those facts which bear on dispositive material issues shall be included in the Statement of Undisputed Facts.

The papers opposing a motion for summary judgment shall include a separate statement of material facts, responding to the numbered paragraphs set forth in the Statement of Undisputed Facts, which the respondent contends present genuine issues to be tried.  The responding party also shall set forth, in separate numbered paragraphs, any additional facts which the respondent contends preclude summary judgment.  All material facts set forth in the statement required to be served by the moving party shall be admitted unless controverted by the opposing party.

Statements of material facts in support of or in opposition to a motion for summary judgment shall include specific and not general references to the parts of the record that support each of the statements.  Each stated fact shall cite the source relied upon, including the page and line of any document or deposition to which reference is made.

2.)  Upon return to the House of Corrections, Officer Parker told an officer who worked on the unit where Plaintiff resided that he had HIV.  (Id. ¶¶ 3, 4.)  Plaintiff admits that he never heard Officer Ford tell anyone that Plaintiff had HIV.  (Id. ¶ 5.)  Moreover, Plaintiff has not testified that Officer Franklyn transported him to the hospital, learned that he had HIV, or told someone else that he had HIV.  (Id. ¶ 6.)  Plaintiff never suffered a physical injury as a result of this incident. (Id. ¶ 7.)

Plaintiff did not file a grievance with the Philadelphia Prison Systems related to the incidents of January 9, 2012.  (Doc. No. 38-3 at 14:18-23, 50:3-20; Doc. No. 36-3.)  Plaintiff had the opportunity to file a grievance by requesting a form, completing it, and filing it.  (Doc. No. 38-3 at 50:4-6; Doc. No. 36-3.)  Plaintiff filed separate grievances at the House of Corrections on January 29, 2006, April 10, 2011, and March 27, 2012.  (Doc. No. 36-3.)  The March 27, 2012 grievance stated that he "[has] not received [his] health shakes and only a cold pack once from the C/O Ms. Burrell.  This is a health issue."  (Id.)  Related grievances were filed on April 4, 2012 and April 7, 2012.  (Id.)

The instant case was initially filed in the Philadelphia Court of Common Pleas on April 15, 2014, and the Einstein Defendants and Dr. Husain removed the case to this Court on April 29, 2014 on the basis of federal question jurisdiction.  (Doc. No. 1.)  An Amended Complaint was filed on July 10, 2014.   (Doc. No. 12.)  By Order dated October 2, 2014, the City of Philadelphia was dismissed as a defendant, and Counts VII, VIII, X, XI, XIII, and XIV were dismissed.  (Doc. No. 18.)  The Counts remaining are as follows:  (1) Count I:  Breach of Physician-Patient Confidentiality, against Dr. Husain; (2) Count II:  Violation of Pennsylvania Confidentiality of HIV-Related Information Act, 35 P.S. § 7601, et seq., against Dr. Husain; (3) Count III:  Violation of the 14th Amendment Right to Medical Privacy under 42 U.S.C. § 1983,

against Dr. Husain; (4) Count IV: Vicarious Liability for a Breach of Physician-Patient Confidentiality, against the Einstein Defendants; (5) Count V:  Vicarious and Direct Liability for a Violation of Pennsylvania Confidentiality of HIV-Related Information Act, 35 P.S. § 7601, et seq., against the Einstein Defendants; (6) Count VI:  Vicarious Liability for a Violation of the 14th Amendment Right to Medical Privacy under 42 U.S.C. § 1983, against the Einstein Defendants; (7) Count IX:  Violation of the 14th Amendment Right to Medical Privacy under 42 U.S.C. § 1983, against Officer Franklyn; and (8) Count XII:  Violation of the 14th Amendment Right to Medical Privacy under 42 U.S.C. § 1983, against Officer Ford.   Plaintiff seeks compensatory damages, punitive damages, delay damages, attorney's fees, and costs.  (Doc. No. 12.)  Factual discovery was completed on June 19, 2015.  (Doc. No. 31.)  Defendants seek summary judgment on all claims.

## III.    STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy.   Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Montgomery Cnty., Pa. v. MERSCORP Inc., 795 F.3d 372, 376 (3d Cir. 2015); see also Fed. R. Civ. P. 56(a).  A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  For a fact to be considered "material," it "must have the potential to alter the outcome of the case."  Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013).   Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Id. (quoting Azur

8

v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (internal quotation marks omitted)).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009) (quotation omitted)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247-249. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. Id. at 255. If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

The nonmoving party may not resist a properly filed motion for summary judgment by relying solely on the unsupported conclusory allegations contained in pleadings, but rather must go beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 248. "[A] party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements." Super Fresh Food Mkts., Inc. v. United Food & Commercial Workers Local Union 1776, 249 F. Supp. 2d 546, 551 (E.D. Pa. 2003). In ruling on a defendant's motion for summary judgment, a mere scintilla of evidence in support of the plaintiff's position is insufficient. Anderson, 477 U.S. at 252. Enough evidence must exist such that a jury could reasonably find for the plaintiff. Id. The plaintiff cannot merely rely upon assertions or speculation. Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985). If the evidence is merely colorable or is not sufficiently probative, summary

judgment may be granted.  <u>Bouriez v. Carnegie Mellon Univ.</u>, 585 F.3d 765, 771 (3d Cir. 2009).

Additionally, "the unverified representations of counsel in a brief are not a proper part of the

record for consideration on a motion for summary judgment."  <u>Prince v. Sun Shipbuilding & Dry</u>

<u>Dock Corp.</u>, 86 F.R.D. 106, 107 (E.D. Pa. 1980).

      Where a non-moving party bears the burden of proof at trial, the moving party's burden

may be "'discharged by 'showing' . . . that there is an absence of evidence to support the

nonmoving party's case.'"  <u>Bouriez</u>, 585 F.3d at 771 (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S.

317, 325 (1986)).  If the moving party carries this burden, "the burden shifts to the non-moving

party to point to sufficient cognizable evidence to create material issues of fact such that a

reasonable jury could find in its favor."  <u>Bouriez</u>, 585 F.3d at 771 (internal citation and quotation

marks omitted).

## IV.    ANALYSIS

### A.  The Officer Defendants' Motion for Summary Judgment Will Be Granted

      Plaintiff claims that Officers Ford and Franklyn violated his constitutional right to

privacy by disclosing Plaintiff's private medical information to another officer within the prison.

Plaintiff has not produced evidence, however, that shows Officer Ford and Officer Franklyn were

personally involved in any alleged violation of his constitutional rights.  Further, even if

Plaintiff's evidence was sufficient to show that Officer Ford and Officer Franklyn violated his

constitutional rights, qualified immunity would shield the officers from liability.  Moreover,

Plaintiff's failure to file a prison grievance and exhaust his administrative remedies before filing

this suit bars this action against the Officer Defendants.  Thus, for these reasons which are more

fully discussed below, the Court will grant summary judgment in favor of the Officer

Defendants.

a.  Plaintiff Has Not Shown that Officer Ford and Officer Franklyn Were Personally Involved in the Alleged Wrongdoing as Required to Sustain a Section 1983 Claim

Plaintiff broadly contends that the Officer Defendants violated his constitutional right to medical privacy by disclosing to another correctional officer and inmates within the Philadelphia Prison System that he is HIV-positive.  The Officer Defendants asserts that summary judgment is appropriate because Plaintiff has failed to present any evidence that either Officer Ford or Officer Franklyn were personally involved in any alleged violation.  The Officer Defendants specifically point to Plaintiff's testimony that Officer Parker told the unit officer that Plaintiff has HIV, and that Plaintiff never heard Officer Ford disclose his medial information to anyone, as well as the fact that Plaintiff has not presented any evidence or testimony that Officer Franklyn transported him to the hospital, learned that he has HIV, or disclosed that information to anyone.  (Doc. No. 36.)  The Officer Defendants' arguments are persuasive.

Pursuant to Section 1983, civil liability may be imposed upon any person who, acting under the color of state law, subjects any person to the deprivation of any right, privilege, or immunity secured by the Constitution and the laws of the United States of America.  42 U.S.C. § 1983.  Section 1983 does not create any new substantive rights, but rather creates a cause of action for violation of a federal right created elsewhere.  See Doe v. Delie, 257 F.3d 309, 314 (3d Cir. 2001).  Here, the right at issue is the Fourteenth Amendment right to medical privacy.  To sustain a Section 1983 claim, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Id.  However, "[a]llegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity."  Id.

11

Plaintiff has not presented any evidence to demonstrate personal involvement by Officers Ford or Franklyn.  In opposing the Officer Defendants' Motion for Summary Judgment, Plaintiff merely rests on conclusory allegations and general statements, which are insufficient to raise genuine issues of material fact.  Plaintiff relies upon the Amended Complaint, Answers to Interrogatories, and Plaintiff's deposition transcript.  (Doc. No. 38.)  Plaintiff's sole factual allegation of wrongdoing in the Amended Complaint against Officers Franklyn and Ford is that "Defendants Franklin and Ford subsequently disclosed [P]laintiff's HIV-positive status to other personnel working in the Philadelphia Prison System and to inmates incarcerated in the Philadelphia Prison System."  (Doc. No. 12 ¶ 15.)  Plaintiff has also submitted Plaintiff's Answers to the Officers' First Set of Interrogatories, but has not provided the Interrogatories themselves to give context to the bare responses.[6]  (Doc. No. 38-2.)  Plaintiff's Memorandum of Law in Response to the Officer Defendants' Motion for Summary Judgment alleges:  "After leaving the examination room, Defendant Officer Ford, in the presence of the [P]laintiff, discussed with Officer Franklyn [P]laintiff's HIV status.  Furthermore, she made comments that if she had known he had HIV, she would have handled things differently."  (Doc. No. 38 at 3.)  To support this statement, Plaintiff generally refers to the Amended Complaint, Answers to Interrogatories, and deposition transcript, without any specific citations.  (Id.)  Plaintiff's Memorandum of Law further states, "Upon arrival back at the prison, the [P]laintiff then heard Defendant, Officer Franklyn, in Officer Ford's presence, tell the officer on the unit about

---

[6]   The Court will not infer the Interrogatories related to each answer, particularly because the responses are short, non-complete sentences.  For example, the most relevant responses are "Dr. Husian [sic], Officer Ford and Officer Franklin (females) that Plaintiff has Aids/HIV [sic]," and "Dr. Husian [sic] to Officers, Officers to each other and to other non-privileged persons and correctional officers."  (Doc. No. 38-2 at 3 ¶ 3.)  Importantly, Plaintiff's counsel signed the Answers, and they are not signed under oath by Plaintiff as required by Fed. R. Civ. Pro. 33(b)(3), (5).  Therefore, the Answers are of little weight.

[P]laintiff's HIV status. . . .   Subsequently, the [P]laintiff saw the officer on the unit looking at [P]laintiff's picture on the computer and talking to other inmates."  (Doc. No. 38 at 4.)  Again, Plaintiff only cites generally to his deposition transcript to support these statements.

Plaintiff's deposition testimony—which is the only substantial evidence submitted—unequivocally indicates that Officer Parker and an undisclosed unit officer are the correctional officers that Plaintiff claims communicated his medical condition to others.   Neither are defendants in this case.  Plaintiff testified that he overheard Officer Parker disclose to the unit officer within the prison that Plaintiff "had got that hot stuff," and that the unidentified unit officer shared this information with inmates.  (Doc. No. 38-3 at 9:13, 12:19 – 13:16.)

Plaintiff specifically testified that he never heard Officer Ford say anything at all about his HIV status.   (Doc. No. 38-3 at 12:4-14.)   Plaintiff's bare allegations in the Amended Complaint and Memorandum of Law, without citations to any specific evidence, are insufficient to establish personal involvement as to Officer Ford.

Moreover, Plaintiff has not set forth any evidence that Officer Franklyn transported him to the hospital where the alleged disclosure was made, learned Plaintiff was HIV-positive, or made any disclosure regarding Plaintiff's medical information.   Plaintiff did not mention Officer Franklyn at any point during his deposition. (Doc. No. 38-3; Doc. No. 36-1 ¶ 6.)   Instead, Plaintiff specifically implicates Officer Parker, who is not a named defendant in this case.

Plaintiff cannot sustain a 1983 claim without showing that the Officer Defendants were personally involved in the alleged wrongdoings.  The Officer Defendants have met their burden of showing that there is an absence of evidence to support the claims against them.  Plaintiff bears the burden of persuasion at trial and has failed to bring any evidence to the Court's

attention that would entitle Plaintiff to judgment.   Thus, summary judgment is warranted, dismissing the claims against the Officer Defendants in their entirety.

        b.  Even if the Officer Defendants Made the Disclosure in Violation of Plaintiff's Constitutional Right, Qualified Immunity Shields Them From Liability

The Officer Defendants further submit that even if a disclosure was made, there was no constitutional violation because a prisoner's right to privacy in his medical information is limited by legitimate penological interests, and the Officer Defendants (and Officer Parker)[7] are nevertheless protected by qualified immunity.   Qualified immunity shields public officials from civil liability as long as their conduct was reasonable in light of clearly established law.   Doe v. Delie, 257 F.3d 309, 312 (3d Cir. 2001).   The applicability of qualified immunity involves a two-pronged test.   Id. at 314.   First, the Court must determine if the plaintiff's allegations are sufficient to establish a violation of a constitutional right.   Id.   Second, the Court must determine whether the right at issue was "clearly established" at the time of the alleged violation.   Id.   The Court may consider either prong first.   Pearson v. Callahan, 555 U.S. 223, 236 (2009).

        i.  A Prisoner's Right to Medical Privacy Is Subject to Legitimate Penological Interests

The Third Circuit has held that inmates retain a Fourteenth Amendment substantive due process right to privacy in their medical information, subject to legitimate penological interests. Delie, 257 F.3d at 323.   In Doe v. Delie, an HIV-positive inmate claimed that his constitutional right to medical privacy was violated by the following procedures:   prison nurses announced his medications loud enough that other prisoners could hear and infer his condition; prison staff informed escorting officers of his medical condition; and during physician visits, the clinic room door was kept open, allowing officers, inmates, and guards to see and hear Doe and the treating

---

[7]  Because Officer Parker is not a named defendant in this action, the Court will not consider whether qualified immunity applies to her.

physician.  Id. at 311-12.  The Third Circuit held that the constitutional right to privacy in medical information exists in prison, but that the right is "subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security."  Id. at 317.  The court in Delie did not address whether there were legitimate penological interests present in that case because there was an undeveloped record on that issue, and the defendants were entitled to qualified immunity.  Therefore, the Delie case does not provide insight as to what would qualify as a legitimate penological interest.

In determining whether a prison policy or regulation is "reasonably related to legitimate penological interests," the Court must consider the factors set forth in Turner v. Safley, 482 U.S. 78 (1987).  They are: (1) whether there is a "'valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it,' and this connection must not be 'so remote as to render the policy arbitrary or irrational;'" (2) "whether inmates retain alternative means of exercising the circumscribed right;" (3) "the costs that accommodating the right would impose on other inmates, guards, and prison resources generally;" and (4) "whether there are alternatives to the regulation that 'fully accommodate the prisoner's rights at de minimis cost to valid penological interests.'"  DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000) (quoting Waterman v. Farmer, 183 F.3d 208, 213 (3d Cir. 1999)).

Here, the Officer Defendants suggest that even if one of the Defendants disclosed Plaintiff's medical information to the unidentified unit officer, such a disclosure served a legitimate safety interest that outweighed Plaintiff's limited privacy right.  They argue that notifying another officer who worked in Plaintiff's unit that he is HIV-positive served a legitimate penological interest because that officer had daily contact with Plaintiff in an often violent setting.  (Doc. No. 36 at 6-7.)  The Officer Defendants ask this Court to find that a

correctional officer's risk of exposure to HIV by way of their contact with HIV-positive inmates justifies the disclosure of the prisoner's medical information.

This Court, like the court in <u>Delie</u>, is not presented with sufficient evidence that would allow an analysis of the <u>Turner</u> factors. In addition, such analysis is unnecessary because the alleged disclosure by the Officer Defendants would be protected by the shield of qualified immunity.

### ii.   The Right Was Not Clearly Established

Qualified immunity "shields public officials from actions for damages unless their conduct was unreasonable in light of clearly established law." <u>Delie</u>, 257 F.3d at 318. If "reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful" then qualified immunity applies. <u>Id.</u> (quoting <u>Good v. Dauphin County Social Servs. for Children & Youth</u>, 891 F.2d 1087, 1092 (3d Cir. 1989)). "The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates the right." <u>Id.</u> (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). The right must be defined in a particularized, specific manner, and not with a "high level of generality." <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2084 (2011). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." <u>Id.</u>

In <u>Delie</u>, the court held that qualified immunity applied because a prisoner's right to privacy in his medical information was not clearly established so that a reasonable officer in the defendants' position would have known that their actions constituted a constitutional violation. 257 F.3d at 321-22. Because the court found that the defendants were entitled to qualified

immunity, the court declined to define the parameters of a prisoner's right to privacy in his medical information. <u>Id.</u> at 323. The court specifically concluded:

> The exact parameters of a prisoner's right to privacy in [their medical] information will have to be determined in a later case on a more complete record, where the <u>Turner</u> factors can be fully considered in the context of the penological interests concerned. Moreover, because we are granting qualified immunity to the defendants, we also do not go on to the issue of the standard that is utilized to determine whether a prisoner's right to privacy in his medical information has been violated. That determination too will have to wait for another day.

<u>Id.</u> Subsequent cases have done little to fill in the gaps left by <u>Delie</u> and define the parameters of a prisoner's right to privacy in his medical information. See <u>Smith v. Hayman</u>, 489 F. App'x 544, 549 (3d Cir. 2012) ("We are aware of no case law . . . that would suggest that the conduct of the defendants, in light of their attempts to avoid disclosure, violated a clearly established constitutional right, and [<u>Delie</u>] did not establish any such rule with obvious clarity."); <u>Illes v. Kcomt</u>, Civil No. 1:12-CV-0395, 2014 WL 297352, at *3 (M.D. Pa. Jan, 27, 2014) (finding that qualified immunity applied to defendants because the parameters of the right had not been so clearly established that the defendant would have known that his actions constituted a constitutional violation).

Because case law at the time of the alleged violation did not clearly state what actions would and would not constitute a violation of a prisoner's right to privacy in his medical information, the Officer Defendants must be entitled to qualified immunity. Plaintiff rightfully states that a reasonable official would have known that a prisoner possesses a right to privacy in his medical information. However, Plaintiff does not acknowledge that the prisoner's right, as established in <u>Delie</u>, is a limited one, "subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional

security." Delie, 257 F.3d at 317. The parameters of the prisoner's right have not yet been clearly established.

Plaintiff points to no cases, and this Court is not aware of any, which hold that it is a violation of the right to medical privacy for an officer to make a comment regarding the prisoner's medical information to the prisoner and to another officer who is already aware of the medical information. Further, such a scenario would not violate a right to privacy because the recipients of the information had prior knowledge. Plaintiff points to no decision that holds that a correctional officer who discloses that a prisoner is HIV-positive to another correctional officer, who is in contact with the prisoner on a daily basis, violates a clearly established right.[8]

Plaintiff's reliance on the Pennsylvania Confidentiality of HIV-Related Information Act to support his claim that the officers should have known that disclosure of HIV information violates a clearly established right is misplaced because a state statute cannot clearly establish a federal right for qualified immunity purposes. Delie, 257 F.3d at 319. The cases Plaintiff refers to also do not support his position. First, Austin v. Pennsylvania Department of Corrections, 876 F. Supp. 1437 (E.D. Pa. 1995), was considered in Delie and "certainly did not clearly establish a constitutional right." Delie, 257 F.3d at 322. Second, Foster v. Lawrence, Civil No. 4:CV-13-2999, 2015 WL 728486 (M.D. Pa. Feb. 19, 2015), was decided in 2015, after the alleged violation in this case which occurred in 2012, and only held that the plaintiff would be allowed to file an amended complaint to allege factual detail. Finally, Hunnicult v. Armstrong, 152 F. App'x 34 (2d Cir. 2005), only addressed pleading standards and held that dismissal of the complaint pursuant to Fed. R. Civ. P. 8(a) was inappropriate.

---

[8]   Disclosure to inmates is not before this Court because the officer who allegedly shared the information with inmates is not a defendant in this action.

Thus, even if one of the Officer Defendants made the alleged disclosure to the unidentified unit officer, and that disclosure constituted a violation of the Plaintiff's right to privacy in his medical information, qualified immunity still would shield the Officer Defendants from liability.

### c. Plaintiff's Claims Against the Officer Defendants are Barred for Failure to Comply with the Prison Litigation Reform Act of 1995

The Prison Litigation Reform Act of 1995 ("PLRA") governs suits by prisoners, and states the following:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Courts have held that compliance with the exhaustion requirement cannot be excused on the grounds of futility. Stewart v. Kelchner, 358 F. App'x 291, 297 (3d Cir. 2009). The statute establishes a bright-line rule and dictates that it is beyond the power of any court to excuse non-compliance with the exhaustion requirement on the ground of futility or any other basis. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000).

Here, Plaintiff admits that he never filed a grievance with the prison about the alleged disclosure of his medical information. (Doc. No. 38-3 at 14:18-23, 51:2-5.) Plaintiff claims that his failure to file a grievance was the fault of the prison grievance system. He suggests that filing a grievance would have been futile because the guard on duty would have assumed that the grievance was about the guard's own conduct and would not have produced a form for fear of being reported. (Id. at 50:7-20.) In Plaintiff's deposition, he stated that he put in a request for a grievance form but never received one. (Id. at 49:14-25, 50:1-20, 51:21 – 52:7.) However, Plaintiff was able to file grievances related to other complaints before and after the incident at

issue in this matter which occurred on January 9, 2012.  (Doc. No. 36-3.)  In particular, Plaintiff filed a grievance on March 27, 2012 related to delivery of health shakes and cold packs.  (Id.)  If Plaintiff was able to file a grievance on other occasions, he could have addressed the alleged violation that is at issue here.  Failing to do so demonstrates that Plaintiff did not exhaust all available remedies as required by the statute, despite having the opportunity to do so.  Thus, Plaintiff is barred from bringing a Section 1983 claim against the Officer Defendants.[9]

For all the foregoing reasons, summary judgment will be granted in favor of the Officer Defendants and Counts IX and XII in which they are named as Defendants will be dismissed.

**B.  The Einstein Defendants and Dr. Husain's Motion for Summary Judgment Will Be Granted in Part and Denied in Part**

The Einstein Defendants and Dr. Husain's Motion for Summary Judgment raises two arguments.  First, they argue that they did not violate the Pennsylvania Confidentiality of HIV-Related Information Act.  Second, they argue that they did not violate Section 1983.  In support of both of these arguments, the Einstein Defendants essentially claim the following:  (1) there is no evidence that a non-treatment related disclosure occurred; (2) an inmate's right to medical privacy is subject to penological interests such as safety; and (3) an inmate's right to medical privacy is not sufficiently clear that a reasonable doctor would understand that inadvertent disclosure of information would violate that right given the interest in the officers remaining

---

[9]  The Einstein Defendants and Dr. Husain do not raise failure to exhaust as a basis for summary judgment.  Because there are a number of questions of fact related to the Einstein Defendants and Dr. Husain which will be discussed, infra, the Court will not apply the exhaustion requirement sua sponte to these Defendants.  See Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that sua sponte dismissal on the basis of failure to exhaust under the PLRA is inappropriate, and failure to exhaust is an affirmative defense to be pleaded by the defendant).

present to ensure safety.[10]   (Doc. No. 37 at 7-10; Doc. No. 40.)  Because the Einstein Defendants and Dr. Husain seek summary judgment dismissing all claims against them, the Court will address each Count in turn.

> a. Count I:  Breach of Physician-Patient Confidentiality against Dr. Husain, and Count IV: Vicarious Liability for a Breach of Physician-Patient Confidentiality against the Einstein Defendants

Plaintiff brings causes of action for breach of physician-patient confidentiality against the Einstein Defendants and Dr. Husain, respectively.   Pennsylvania recognizes a civil cause of action for breach of the physician-patient privilege where "confidential disclosures occurred that were unrelated to any judicial proceedings."  Grimminger v. Maitra, 887 A.2d 276, 279 (Pa. Super. Ct. 2005) (citing Haddad v. Gopal, 787 A.2d 975, 981 (Pa. Super. Ct. 2001); Moses v. McWilliams, 549 A.2d 950, 953 n.4 (Pa. Super. Ct. 1988)).  In Haddad v. Gopal, the Superior Court of Pennsylvania held that "doctors have an obligation to their patients to keep communications, diagnosis, and treatment completely confidential[, e]specially when, as in [that] case, a sexually transmitted disease is in issue."  787 A.2d at 981.  Consent which is express or implied may serve as an affirmative defense.  Id.

In this case, the Einstein Defendants and Dr. Husain have not discussed in their summary judgment motion or supporting memorandum the standards or any caselaw governing a state law claim for breach of physician-patient confidentiality, nor have they pointed to any evidence or lack thereof justifying summary judgment on these Counts.  It appears that they do not really contest the viability of this cause of action at this stage of the proceedings.  Therefore, summary judgment will not be granted as to Counts I and IV.

---

[10]   The third basis is essentially an argument for qualified immunity, although the Einstein Defendants and Dr. Husain never use the phrase "qualified immunity" or establish their entitlement to its protection.

> b.  Count II:  Violation of Pennsylvania Confidentiality of HIV-Related Information Act, 35 P.S. § 7601, et seq., against Dr. Husain, and Count V: Vicarious and Direct Liability for a Violation of Pennsylvania Confidentiality of HIV-Related Information Act, 35 P.S. § 7601, et seq., against the Einstein Defendants

Counts II and V assert that the Einstein Defendants and Dr. Husain violated Plaintiff's right to confidentiality and privacy pursuant to the Pennsylvania Confidentiality of HIV-Related Information Act, 35 P.S. § 7601 et seq. (the "Act").  The Act was enacted "to promote confidential testing" for the human immunodeficiency virus (HIV) "in order to encourage those most in need to obtain testing and appropriate counseling and to better serve the public health by making HIV testing a routine part of general medical care . . ." and "to provide a narrow exposure notification and information mechanism for individual health care providers or first responders . . ." 35 P.S. § 7602(c), (d).  The legislature found that "testing and counseling are promoted by establishing confidentiality requirements which protect individuals from inappropriate disclosure and subsequent misuse of confidential HIV-related information."  35 P.S. § 7602(a).

The Act states that "[n]o person or employee, or agent of such person, who obtains confidential HIV-related information in the course of providing any health or social service or pursuant to a release of confidential HIV-related information under subsection (c) may disclose or be compelled to disclose the information, except to [certain enumerated persons]."  35 P.S. § 7607.  The exceptions include but are not limited to disclosure to the subject (defined as "[a]n individual or a guardian of the person of that individual"), to any person specifically designated in a written consent which meets the requirements of the statute, and to "an agent, employee or medical staff member of a health care provider, . . . provided that the agent, employee or medical staff member is involved in the medical care or treatment of the subject. . . ."  See 35 P.S. §

7607(a)(1)-(12); 35 P.S. § 7603.  Also, as the Plaintiff points out, the statute expressly provides

an exception for disclosure to the following:

> Employees of county mental health/mental retardation agencies, county children
> and youth agencies, county juvenile probation departments, county or State
> facilities for delinquent youth, and contracted residential providers of the above-
> named entities receiving or contemplating residential placement of the subject,
> who:  (i) generally are authorized to receive medical information; and (ii) are
> responsible for ensuring that the subject receives appropriate health care; and (iii)
> have a need to know the HIV-related information in order to ensure such care is
> provided.

35 P.S. § 7607(a)(12).  The Act does not provide a similar exception for employees of adult

correctional facilities.

A private cause of action is created under the Act, however, allowing "[a]ny person

aggrieved by a violation of this act" to bring a civil action "against the person who committed

such violation" and recover compensatory damages.  35 P.S. § 7610.

The argument of the Einstein Defendants and Dr. Husain that there is no evidence of a

non-treatment related disclosure does not address the language of the statute.[11]   They do not

provide any support for the proposition that a disclosure during the course of treatment would

not constitute a violation under the Act, which specifically prohibits disclosure of HIV-related

information in the course of providing health services.  Defendants' other arguments regarding

---

[11]   The Einstein Defendants and Dr. Husain also seek to rely in part on their Requests for
Admissions directed to Plaintiff which they claim are deemed admitted due to Plaintiff's
failure to respond.  (Doc. Nos. 37, 40.)  Plaintiff denies that he received the Requests for
Admissions. (Doc. No. 39.)  Although the Einstein Defendants and Dr. Husain note that they
did serve Plaintiff's counsel, they have not attached proof of service.  (Doc. No. 40 at 4.)
Even if the Requests for Admissions were deemed admitted, the admissions would not
necessitate entry of summary judgment.   One Request for Admissions that the Einstein
Defendants and Dr. Husain rely on is: "It is admitted that Plaintiff did not witness Dr. Ali
Husain revealing any information regarding his medical condition(s) and/or history to
Defendants, Franklin and/or Ford."  (Doc. No. 37 at 3 ¶ 10, 8, 12 ¶ 2, 17 ¶ 5.)  There is a
genuine issue of material fact as to the disclosure because Plaintiff's deposition testimony
states that Dr. Husain revealed that Plaintiff is HIV-positive to the officers during the
examination.

an inmate's limited right to medical privacy also do not address alleged violations of this state statute.   Neither side has cited to any cases that support the applicability or inapplicability of the Act to this case.   An independent review also reveals no caselaw on point.   Consequently, there remain genuine issues of material fact as to whether the Einstein Defendants and/or Dr. Husain violated this statute by disclosing Plaintiff's confidential HIV-related information in the course of providing health services.   Whether the Act is applicable and whether these Defendants would be covered by any of the exception categories is a genuine issue that remains.   Furthermore, the Einstein Defendants have not addressed their responsibility for direct and vicarious liability. Therefore, Defendants' Motion for Summary Judgment will be denied on Counts II and V for alleged violations of the Pennsylvania Confidentiality of HIV-Related Information Act by the Einstein Defendants and Dr. Husain.

> c.   Count VI: Vicarious Liability for a Violation of the 14th Amendment Right to Medical Privacy under 42 U.S.C. § 1983 against the Einstein Defendants

Count VI raises a claim for vicarious liability against the Einstein Defendants pursuant to 42 U.S.C. § 1983.   The Amended Complaint alleges the following:

> 38.   The aforesaid actions of Defendants AEMC, AEHN, AEMA, and AEMP, by and through their employee, Defendant Dr. Ali Husain, constituted a violation of the plaintiff's right to medical privacy under the 14th Amendment to the United States Constitution, for which Defendants AEMC, AEHN, AEMA, and AEMP are vicariously liable.   Said violation is actionable pursuant to 42 U.S.C. § 1983.
>
> 39.   As a direct and proximate result of the aforesaid actions of Defendants, AEMC, AEHN, AEMA, and AEMP, by and through their employee and/or agent, Defendant Dr. Ali Husain, the plaintiff sustained the injuries and damages set forth herein.

(Doc. No. 12 ¶¶ 38-39.)

Section 1983 requires personal involvement.[12]  Vicarious liability is inapplicable to Section 1983 suits.  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  A private company cannot be held liable under Section 1983 for the acts of their employees under a theory of vicarious liability.  See Connick v. Thompson, 563 U.S. 51, 60 (2011) ("Local governments are responsible under 1983 only for their own illegal acts; they are not vicariously liable for their employees' actions."); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)) (finding a private company "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability"); Luck v. Mount Airy No. 1, LLC, 901 F. Supp. 2d 547, 564 (M.D. Pa. 2012) (quoting Regelman v. Weber, No. 10–675, 2011 WL 1085685, at *5 (W.D. Pa. Mar. 21, 2011)) ("In applying the reasoning of Monell to a private corporation, "[j]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights.").  There is no evidence that the Einstein Defendants committed any acts that violated Plaintiff's Constitutional rights.  Therefore, summary judgment will be granted in favor of the Einstein Defendants on Count VI for vicarious liability pursuant to Section 1983.

> d. Count III:   Violation of the 14th Amendment Right to Medical Privacy under 42 U.S.C. § 1983 against Dr. Husain

Finally, Plaintiff raises a claim under Section 1983 that his right to medical privacy under the Fourteenth Amendment was violated by Dr. Husain.  There are genuine issues of material fact which preclude the entry of summary judgment in favor of Dr. Husain on this Count.

---

[12]   The Einstein Defendants do not raise this argument in support of their Motion for Summary Judgment.  The Court, however, is compelled to grant summary judgment in favor of the Einstein Defendants on this Count.

i.   Whether Dr. Husain Is a State Actor Pursuant to Section 1983

Initially, the parties do not address whether Dr. Husain, or even the Einstein Defendants, were acting under "color of state law" when Plaintiff was treated by Dr. Husain at the Einstein Medical Center on January 9, 2012.  The Amended Complaint alleges that "Defendants Husain, [and the Einstein Defendants] contracted with [the City of Philadelphia] to provide medical care and treatment to prisoners in the Philadelphia Prison System" and that the "[D]efendants were acting under color of state law."  (Doc. No. 12 ¶¶ 10, 12.)  The Einstein Defendants and Dr. Husain deny these allegations in their Answer.  (Doc. No. 15 ¶¶ 10, 12.)  No evidence before the Court addresses the relationship between the City of Philadelphia and the Einstein Defendants and Dr. Husain.[13]   Therefore, there is a material issue of fact as to whether they were acting under color of state law when Plaintiff was examined by Dr. Husain.  Because Dr. Husain has not argued that he was not acting under color of state law in the Motion for Summary Judgment, and drawing all reasonable inferences in favor of Plaintiff, the Court will assume at this stage that Dr. Husain is a proper Section 1983 defendant for purposes of the remaining analysis.

---

[13]   A private actor can be considered a state actor under § 1983 in one of two ways.  "The first category involves an activity that is significantly encouraged by the state or in which the state acts as a joint participant."  Boyer v. Mohring, 994 F. Supp. 2d 649, 657 (E.D. Pa. 2014).  "The second category of cases involves an actor that is controlled by the state, performs a function delegated by the state, or is entwined with government policies of management."  Id.  The Third Circuit has set forth "'three broad tests' to determine if a private defendant is a state actor:  (1) whether the defendant exercised powers that are 'traditionally the exclusive prerogative of the state;' (2) whether the defendant acted 'with the help of or in concert with state officials;' or (3) whether the 'state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity'."  Borrell v. Bloomsburg Univ., 63 F. Supp. 3d 418, 434 (M.D. Pa. 2014) (quoting Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009)).  The "basic question" is whether the private party's conduct "can be fairly attributed to the state."  Id.

Here, the Court has not been presented with evidence to allow for this analysis.

26

ii.  Whether Plaintiff's Right to Medical Privacy Was Obviated
By Legitimate Penological Interests

Dr. Husain argues that Plaintiff did not have a right to medical privacy during the treatment because an inmate's right to medical privacy is subject to penological interests such as the need for officers to remain in the examination room to ensure safety between the medical provider and inmate.  (Doc. Nos. 37, 39.)  Dr. Husain argues that Plaintiff, as a prisoner, was required to be accompanied by correctional officers during his medical treatment.  Plaintiff does not appear to dispute that the officers were required to accompany Plaintiff in the examination room.  Plaintiff argues that Dr. Husain had available alternatives, such as writing a note to Plaintiff or asking the officers to step out of the room, which would have avoided revealing Plaintiff's HIV-positive status to the correction officers.  (Doc. No. 39 at 8.)  Additionally, Plaintiff asserts that summary judgment must be denied because Dr. Husain has not set forth evidence of legitimate penological interests necessary to consider the reasonableness of the safety regulation.

As noted, a prisoner maintains a constitutional right to privacy in his medical information, subject to legitimate penological interests.  Delie, 257 F.3d at 317.  In Doe v. Delie, the Supreme Court further stated:

> [A] prisoner does not enjoy a right to privacy in his medical information to the same extent as a free citizen.  We do not suggest that Doe has a right to conceal this diagnosed medical condition from everyone in the corrections system.  Doe's constitutional right is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security.

> Specifically, an inmate's constitutional right may be curtailed by a policy or regulation that is shown to be "reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  Courts must respect the administrative concerns underlying a prison regulation, without requiring proof that the regulation is the least restrictive means of addressing those concerns.

Id.  A prisoner's right to privacy in his medical information is "counterbalanced by legitimate penological interests, such as safety and practicability of accommodation."  Smith v. Haymam, 489 F. App'x 544, 549 (3d Cir. 2012).  In determining the reasonableness of regulations that are asserted to be related to legitimate penological interests, the Court considers the four factors set forth in Turner v. Safley, enumerated above.  See Delie, 257 F.3d at 317 (quoting DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000)).  As noted, in Delie, the parties did not provide evidence of legitimate penological interests, costs of accommodating the plaintiff's privacy interest, or availability of alternatives to the disclosures.  Id.  Therefore, the court was unable to assess the factors because speculating about them would be inappropriate.  Id.  Similarly, in the instant case, there is no evidence before the Court to allow a consideration of these factors.

Although it is not clear whether the presence of officers in an examination room with a prisoner was pursuant to a policy of the prison, hospital, or both, it is evident that such a policy requiring corrections officers to accompany a prisoner in a hospital serves the necessary purposes of ensuring the safety of the hospital personnel and public and the security of the prisoner.  The presence of the corrections officers during the medical treatment cannot be said to be arbitrary.  However, it is not clear that Dr. Husain had no choice but to disclose Plaintiff's HIV-status to the officers.  It is a question for the jury whether Dr. Husain should have used a more discreet method, such as whispering the information, writing it down to show Plaintiff, or taking some other action instead of verbally disclosing the information in the presence of the officers.

As such, the Court declines to find that this claim warrants summary judgment in favor of Dr. Husain.

### iii.   Whether Qualified Immunity Applies to Dr. Husain

Dr. Husain does not argue that he is entitled to qualified immunity.  To be sure, the phrase "qualified immunity" is not used in the legal briefs (Doc. Nos. 37, 40), and entitlement to

qualified immunity is not established.   However, he asserts that the right to medical privacy under the circumstances was not clearly established (one prong of the qualified immunity analysis), and relies on cases which applied qualified immunity (specifically, Doe v. Delie, Smith v. Hayman, and Illes v. Kcomt).  Plaintiff responds that there is no qualified immunity because it was clearly established at the time of treatment that a prisoner has a right to privacy in his medical information.  (Doc. No. 39 at 9-11.)  As such, a brief discussion is warranted.

Dr. Husain relies on Doe v. Delie, supra, Smith v. Hayman, 489 F. App'x 544 (3d Cir. 2012), and Illes v. Kcomt, 2014 WL 297352 (M.D. Pa. Jan. 27, 2014), for the proposition that an inmate's right to medical privacy is not sufficiently clear that a reasonable doctor would understand that inadvertent disclosure of information would violate that right.  (Doc. No. 37 at 8-10; Doc. No. 40 at 3.)  None of these cases involved a private hospital physician who disclosed that an inmate was HIV-positive to correctional officers during treatment.  In Smith v. Hayman, the prisoner brought suit against various prison medical professionals and administrators, including a claim for deprivation of his constitutional right to privacy, related to his attempt to be diagnosed and treated for Gender Identity Disorder.  489 F. App'x 544 (3d Cir. 2012).  The plaintiff claimed his right to privacy was violated because the prison psychiatrist and social worker held confidential counseling sessions within view and potential earshot of other inmates. Id. at 548.  The Third Circuit found that there was no evidence that the defendants made any improper disclosures of any medical information because there were no alleged disclosures other than between the medical staff members and prison officials, and there was no evidence anyone overheard the discussions.  Id. at 549.  Moreover, a defendant's affidavit indicated that there were no "other, more-private, secure environments."  Id.  The Third Circuit held that the defendants were entitled to qualified immunity because they were "aware of no case law, and

[plaintiff] points to none, that would suggest that the conduct of the defendants, in light of their attempts to avoid disclosure, violated a clearly established constitutional right, and Doe did not establish any such rule with 'obvious clarity.'" Id.

In Illes v. Kcomt, an inmate alleged that the prison psychiatrist violated his right to privacy in his confidential medical information stemming from the fact that the psychiatrist would insist on holding counseling sessions at the cell door due to safety concerns for prison staff.  Civil No. 1:12-CV-0395, 2014 WL 297352 (M.D. Pa. Jan. 27, 2014).  The court found the reasoning in Smith to be directly on point, and applied qualified immunity to the prison doctor. Id. at *2-3.  It is unclear what type of medical information was discussed, or if anyone actually overheard the sessions. These cases are distinguishable and do not provide support for granting summary judgment in the instant case based on the evidence before the Court.

As noted above, it is not firmly established whether Dr. Husain is a state actor who was acting under color of state law when he treated Plaintiff.  In any case, it is clear that he is a private actor, not employed by the state.  A private party may be deemed to have been acting under color of state law, but that does not automatically mean the party will be entitled to qualified immunity.  As noted, qualified immunity protects "*government officials* from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Lang v. Pa. Higher Educ. Assistance Agency, 610 F. App'x 158, 162 (3d Cir. 2015) (citation omitted) (emphasis added).  As quoted above, qualified immunity may be available to private actors under certain circumstances where they are, in effect, acting as government officials.  Id. at 163 n.7 (citing Filarsky v. Delia, 132 S. Ct. 1657 (2012); Richardson v. McKnight, 521 U.S. 399 (1997); Williams v. O'Leary, 55 F.3d 320, 323 (7th Cir. 1995)).  In determining if qualified immunity

applies to private actors, the Court must review the circumstances of the case, including the relationship between the government and private party, analyze whether there is a "firmly rooted tradition" of immunity, and consider the history and policy considerations related to qualified immunity.  See Richardson, 521 U.S. at 404-05; Filarsky, 132 S. Ct. at 1667; Foster v. City of Phila., Civil Action No. 12-5851, 2014 WL 5821278, *18-21 (E.D. Pa. Nov. 10, 2014).

There is not enough evidence before the Court to determine whether Dr. Husain would be entitled to qualified immunity.  Because Dr. Husain does not affirmatively raise a qualified immunity argument and there are genuine issues of material fact remaining, the Court cannot grant summary judgment at this stage.  Dr. Husain is free to raise this argument at trial if applicable.  Accordingly, summary judgment will be denied as to Count III for a violation of Plaintiff's right to medical privacy under 42 U.S.C. § 1983 against Dr. Husain.

## V.  CONCLUSION

For all the foregoing reasons, the Officer Defendants' Motion for Summary Judgment (Doc. No. 36) will be granted in its entirety on Counts IX and XII, and the Einstein Defendants' and Dr. Husain's Motion for Summary Judgment (Doc. No. 37) will be granted on Count VI, and denied on Counts I, II, III, IV, and V.  Therefore, the following claims remain in this case:

1.  Against Dr. Husain, Count I for Breach of Physician-Patient Confidentiality;

2.  Against Dr. Husain, Count II for a Violation of Pennsylvania Confidentiality of HIV-Related Information Act, 35 P.S. § 7601, et seq.;

3.  Against Dr. Husain, Count III for a Violation of the Fourteenth Amendment Right to Medical Privacy under 42 U.S.C. § 1983;

4.  Against the Einstein Defendants, Count IV for Vicarious Liability for a Breach of Physician-Patient Confidentiality; and

5.  Against the Einstein Defendants, Count V for Vicarious and Direct Liability for a Violation of Pennsylvania Confidentiality of HIV-Related Information Act, 35 P.S. § 7601, et seq.

An appropriate Order follows.